Okay, our next case is 523-0009, Koshinski v. Yenchko. If I'm saying that correctly, I've got Mr. Thank you. I've got Mr. Mag and Miss, is it Jenny? That's not your name. It's Johnny. Johnny, okay. But I know her. I've got a nomenclature, so I understand. And obviously, you can tell we took that second case. Mr. Mag ran a little late, so we went ahead and took them so we could go ahead and get started. So with all that being said, Mr. Mag, are you ready to proceed? I am, thank you. Go right ahead. May it please the court, counsel, ladies and gentlemen, may I represent David Koshinski. This is a Second Amendment case. The issue in this case is the effect of ex parte emergency orders of protection on Second Amendment rights. Is it really a Second Amendment case or is it a due process case? It is a Second Amendment case. We brought it under the Second Amendment. We probably could have also brought it under due process. The U.S. Supreme Court, while this case was pending on appeal, actually, issued its opinion in Rahimi, where the U.S. Supreme Court analyzed the federal version of this statute. And the federal version of this statute tracks with what I'll call the older Illinois statute, still on the books, but not an issue in this case. The federal version of this statute, in order to suspend or invalidate Second Amendment rights, the Supreme Court's federal statute requires notice of an opportunity to be heard before rights are invalidated, as well as a credible finding of actual dangerousness in the words of the Rahimi decision. That tracks with what I'll call the older, pre-existing Illinois statute, again, still on the books, but not an issue in this case. The more recent Illinois statute, an issue in this case, simply requires that an order of protection be issued. Period. End of sentence. Doesn't matter why. Doesn't matter whether anybody's gotten notice. Doesn't matter if the first inkling that you have that an order of protection's been filed is literally the letter you received from the state police that says we've revoked your point card because an order of protection has been filed against you. In this case, Mr. Kaczynski had an order of protection filed against him, if I'm saying this correctly, an ex-stepfather-in-law, where the ex-stepfather-in-law probably did loan Mr. Kaczynski some money, and Mr. Kaczynski, for whatever reason, either was unable or unwilling to repay it, and the ex-stepfather-in-law contacted Mr. Kaczynski, made various comments to Mr. Kaczynski, including about coming down to go visit Mr. Kaczynski at his home to collapse, and Mr. Kaczynski said, well, if you come and attack me, I'll defend myself. Words without effect. Is everything we're talking about here from an EOP, not a plenary order? That is accurate. There was never a plenary order in it. Never was one, so the EOP expired or something else happened with it? Yes. Well, there was an agreed-to order. There was an agreed-to order after the FOIA card had been suspended. Kaczynski says there shouldn't be mutual orders of protection, but this wasn't a mutual order of protection. It was a mutual stay-away order, which is, in effect, the same thing, but not by definition. The original order that was entered was a ex parte emergency order of protection. After the emergency ex parte order of protection was entered, a mutual stay-away order was entered, and then subsequently vacated. When an emergency order of protection is entered, does that automatically implicate Second Amendment rights? Yes. There doesn't have to be a special finding that it's... No finding, well, under the statute that's being challenged here, no finding is required. All it takes is literally that an emergency ex parte order of protection for any reason, or dare I say no reason at all, is entered. Unlike the federal statute, which required both notice and opportunity to be heard and a finding of credible danger, in Rahimi, Mr. Rahimi was found to be actually dangerous. I mean, he was actually shooting at people there, according to the opinion from the Supreme Court. Is there a distinction between a finding of dangerousness and a finding that abuse occurred, which is what is necessary for an EOP? The way that abuse is defined under the statute, things that aren't even criminal or, dare I say, even civilly actionable as a tort, could be abuse. The abuse that was found in this case was literally a phone call from the ex-stepfather-in-law to Mr. Kaczynski, and that this ex-stepfather-in-law was afraid that as a result of that, Mr. Kaczynski might attack him. That's the phrasing in the actual order of protection petition. Not exact, but very close. In this case, literally as I said, for any reason or no reason at all, an emergency ex parte order is entered. The FOID card is suspended by operation of the clerk sending notice of the suspension or the order of protection to the state police, and the state police just summarily suspends whether there's a finding of dangerousness or not. Well, let me ask two questions. Sure. After an EOP is granted and the FOID card is suspended, as we talked about, there is a mechanism later down the road where that person can go through the ISP and try to get their FOID card reinstated, correct? That is accurate.  Then the second to that is, given the nature of most EOPs, and obviously we're talking about your case, but I sat on trial court for almost 19 years and did a lot of EOPs. I would imagine. And really isn't this because if an EOP is, and I'd say this all the time when I issued one, it's only a piece of paper. Yes. It does not protect you. It's not a shield from anything. It does not protect anything. So essentially the way the statute is written is to try to make sure that further violence, possibly a gun violence, where a person gets served with this EOP and then does something drastic. I mean, wouldn't you say that is the reason or may be the reason why the statute is drafted the way it is? I think that is the intent, but I think that's also the intent of the original statute. I think it's also the intent of the federal statute. But there are lots of things that would not be constitutional that could potentially have the same justification. A total ban on handguns that the U.S. Supreme Court says is unconstitutional could arguably have the same justification. But that's unconstitutional for the Heller case. In this case, as explained in Rahimi, while the plain text of the Second Amendment for the Bruin test clearly applies, we're talking about keeping firearms in your possession, we're not even talking about using them, carrying them anywhere. As a concept, the statute prohibits the respondent of the EOP from possessing a firearm anywhere for any reason at all. In their home, in their safe, in a dungeon, in a vault. It's a blanket prohibition. It's a blanket prohibition. And while at the time of the revolution, as explained in Rahimi, there were mechanisms in place to keep people from going out armed to terrorize the king's subjects, or words to that effect, this statute, it goes well beyond that. Mr. May, the trial judge seemed to have some confusion, and I'm having the same confusion as to whether you're arguing an as-applied challenge or a facial challenge. Your brief says it's an as-applied. As I understand an as-applied challenge, it applies to the fact and issue. And as I understand a facial challenge, it applies that the statute is not constitutional under any circumstances. And it seems to me you're arguing the latter. The statute itself applies to all orders of protection. Our challenge here is only to emergency ex parte orders of protection, a subset of the statute. So you're arguing for your client only. It's an as-applied challenge. It is an as-applied challenge. Okay. The order of protection did not prohibit firearm possession. It was the state police that made this determination? That is accurate. As I understand it under Section 214, the remedies under an order of protection, Section 14.5 says before you can prohibit firearms, there has to be an actual hearing with both sides given notice. You have to have restraining and stalking, that type of thing. And there also has to be a specific finding that there was a credible threat to the physical safety. That confuses a lot of jurists in this state. That's the old statute still on the books. But the statute challenged here applies to all orders of protection. The statute you're describing is consistent with what was adjudicated at the federal level in Rahimi. We don't challenge the statute you just quoted. With the emergency ex parte order of protection, the plot wouldn't prohibit a firearm under that statute because there would be no notice almost all of the time by virtue of being an ex parte order of protection. The statute here was enacted much more recently than that statute. I think that statute was enacted maybe in the mid to late 80s, the one you just quoted. This one is in the last several years. And I'm not sure why it was passed. Legislature can pass for whatever reasons it wants. But there is no historical analog to a total ban on possession of firearms to somebody that hasn't had an opportunity to come in, put on their defense, deny allegations, have an actual hearing. This was all dismissed and no plenary were entered. Did the Illinois State Police reinstate your clients? Ultimately it was reinstated. Presently my client has a FOIA card, yes. So why isn't this moved? If the public interest exception was applicable here, why did it take three years to get back to this court? I mean, it seems to me that if this was such an important case that we wouldn't be languishing in the courts on this issue. We went through several judges. We went through a pandemic. Beyond that, I have no idea why it took so long to litigate. Except that it's already been here once and back. Right. And so it seems to me that the public interest exception is not valid anymore. It's been here. It's been back. It's not expedited, that's for sure. I acknowledge the case probably didn't proceed as quickly as I had hoped that it would proceed. But it is here now. The issue has been handled by this court. I think that's the law of the case. Let me ask you this. Since the elimination of the emergency order of protection causes the state police to reinstate rights, I may be misquoting the statute, but under the order of protection statute, either section 222 or 228, you can file on two days' notice to have the EOP reheard. So if you have that option within two days' notice, why is it necessary for us to go into all this other business with the state police and issue a notice of suspending? I mean, if you could have done all this in two days' notice. As a practical matter, let's assume that such a motion was filed. And let's assume that the trial court rehears it. Well, your FOID card is already suspended at that point. For two days. No. It takes between 30 and 45 days, if you're lucky, for the state police to reinstate your FOID card. Which is my question. How long did it take for you to get your client's FOID card reinstated? I'm not sure exactly in this case, but the average is 30 to 45 days. Fair enough. So going back to the mootness issue, Mr. Magg, isn't the public interest exception applied to facial challenges as opposed to as-applied challenges? I don't see why it would be limited to only facial challenges. But generally, from a public interest point of view, we should be adjudicating things that affect the public generally as opposed to one person. This does affect the public generally. I can't tell you. Well, that's why I asked you at the beginning. Are we an as-applied challenge or a facial challenge? And you argued in your brief an as-applied challenge. As I understand the facial challenge, an as-applied challenge, it is an as-applied challenge. It might be a very broad as-applied challenge. But I'm trying to weigh the as-applied, which is one person, vis-a-vis the public interest exception to the mootness doctrine. Well, again, the public interest exception in mootness has already been adjudicated by this panel in a published appellate decision. And I don't believe it's before the panel presently. That being said, there would literally be no way that a case like this could be handled on a facial challenge, especially in light of Rahimi, because all you need is the one case, example, Rahimi, where you have a genuinely dangerous person who has had all of his due process rights protected and has had a credible finding of dangerousness, none of which happened here, and the same statute applies. Well, the same statute also applies to Mr. Kishinsky, who had none of his due process rights protected, had no finding of dangerousness, and was probably about as harmless a man as you could ever have to have a warrant of protection entered against him. And I see that I'm out of time, unless you have any questions. Go ahead. Go ahead and finish your thought. I'll finish my thought. Okay. Thank you. Thank you. Just a quick comment. There was a statement earlier, section 224, not 222 or 228. It's 224 that has the two days notice reopening. Well, that's probably correct. Before we let you go, Mr. McIntosh, we want to make sure. Any questions? No other questions. All right. Thank you. Obviously, you have your time quarter vote. Thank you. Come on up, counsel. Go right ahead. Thank you. Good morning, Your Honor, and may it please the Court. Counsel. I'm Assistant Attorney General Leah Jonig on behalf of the appellee, Chief of the Firearm Services Bureau of the Illinois State Police. Section 8.2 of the Floyd Act and Section 70B of the Firearm Concealed Carry Act suspend those firearm licenses when the license holder is under an emergency order of protection. A court can enter an emergency order of protection only if it makes a finding that there has been abuse by the license holder of another person and that that further abuse will likely occur. This is not a red flag law case, correct? This is a regular standard EOP. Correct. Yes, Your Honor. There's two statutes, one's in the Floyd Act, one's in the Concealed Carry Act, that say whenever there's any order of protection entered, these licenses are suspended. And then you get them back when the order is. The state has, in the last few years, adopted or enacted a red flag law where if you think someone's in danger and they have guns, you can go in and take their guns, right? I'm afraid I don't know the answer to that, Your Honor. But these statutes specifically refer to orders of protection. Why does the Floyd Act supersede the Emergency Order of Protection Act that provides specifically you can take someone's guns or prohibit them from possessing guns if the court makes specific findings, but here under the Floyd Act, any finding whatsoever that the EOP should issue suspends your right to have a firearm? The Floyd Act and the Concealed Carry Act statutes were enacted later, so if there was some sort of conflict between the statutes, which I don't think there is, then the later ones would still control. And the legislature, I think, reasonably could have found as the time went on, after the Domestic Violence Act was entered, that, you know, well, these findings are necessary to enter an order of protection. You know, they do suggest a threat of physical violence, and so it's reasonable to require that that would lead to the temporary suspension, again, for only the time period of the order of protection. You can enter an emergency order of protection in the defining of abuse, but abuse is defined pretty broadly in the statute as harassment, intimidation, interference with liberty. There's a whole list of things that can be abused. I mean, repeatedly telephone somebody at their work can be abused, but it doesn't necessarily implicate firearm rights, it doesn't seem like. So that's a pretty big jump from abuse in general to suspending someone's FYD card or concealed carry card. Well, I think what the General Assembly sort of implicitly found is that these actions that, you know, may not be a very explicit, you know, I'm going to come to your house and beat you up kind of threat, but they are threatening behaviors, even if they don't have that sort of explicit weight. The General Assembly, I think, reasonably understood that, you know, it wouldn't incumbent, you know, to limit the threats that were to limit the statutes to those kinds of explicit threats wouldn't, you know, sort of capture these other threatening behaviors like stalking someone, following them, you know, looking through their windows. All of these things could be, you know, understood as threats. And importantly, the U.S. Supreme Court in Rahimi did not limit its holding to only some kind of threats. The court said very clearly if there is a, you know, a judicial finding of a credible threat, then it is consistent with the Second Amendment to temporarily require a person to temporarily disobey. Are the threats that are under Rahimi the same as abuse under our statute? Are they one and the same? I mean, the definitions don't track precisely, but we argue that the definition of abuse in the statute does fall under the credible threat. That's the language that Rahimi uses, credible threat. As I read the briefs in this case, it struck me that this might be a Second Amendment case, but it might also be a due process case. I asked Mr. Maga, he said he thinks it's a Second Amendment case. Do you agree with that? Yes, Your Honor. Yes, I agree with that. And that's because the U.S. Supreme Court in Rahimi kind of underscored that. But it said that when you have, because there were similar arguments presented in that case, that the procedures that led to the order of protection that ultimately, you know, led to the suspension of firearms licenses were not sufficient. And the Supreme Court in Rahimi in footnote 2 said these are due process arguments, and what we have here is a Second Amendment claim. These kinds of arguments aren't relevant here. And so, again, with this kind of broad holding of Rahimi, that whenever there is a credible threat found by a court, then that is sufficient for a temporary, and as Your Honor noted, that there's the emergency order of protections, they don't last very long, and they can be moved to vacate with only two days' notice. That's, in fact, much shorter than the time period that was at issue in Rahimi that the court found was permissible. And so that's why this case falls within Rahimi's holding. And so, you know, Rahimi is therefore controlling and requires this Court to affirm. The Court can kind of end its analysis there on that issue. Mr. Kuczynski's argument about Rahimi not applying is really based on kind of two arguments, one that the, he sort of challenges the findings themselves in his particular order of protection. But, you know, there's nothing in the record that kind of suggests that that border was somehow invalid. He did move to vacate that order, and then instead of kind of pursuing that, agreed to a mutual stay-away order. So there's nothing in the record saying that the findings in the order of protection were somehow, you know, frivolous or invalid. And instead what we have is we have sworn testimony from the Petitioner that Mr. Kuczynski threatened to beat him up. And so even if there are these edge cases about some kinds of orders, you know, some orders of protection not necessarily carrying the sort of threat of physical harm, this case does. And so that would kind of, that certainly makes this as-applied challenge fall into the scope of Rahimi, and it would also make a facial challenge if that were before the Court. Facial challenges are very different than as-applied challenges. Would you agree with that? Yes, Your Honor. This is an as-applied challenge according to Mr. Magg's brief. Would you agree with that? I agree that he says he uses the label as-applied. I agree that he uses the label as-applied, and if this Court were to find that dispositive about what kind of challenge he's bringing, we would not dispute that. You know, he also uses, you know, if you look at the relief he seeks in his case, he's seeking to invalidate these laws for all orders of protection. And it's true that the statutes do apply not just to emergency orders of protection, but to all orders of protection. But that doesn't make a challenge to the statutes vis-a-vis all emergency orders of protection like an as-applied challenge. It's still a facial challenge. I'm just not sure why this case isn't moved. Again, Your Honor, this Court certainly found that it applied the public interest exception based on. On a facial challenge. I agree. Yes, Your Honor. The Court clearly, in its earlier opinion, understood this case to be a facial challenge. So if it's an as-applied challenge, which is kind of a new theory, then I think it is moot. Right. The prior case that we decided and sent back was for a facial challenge. But Mr. Magg's brief before us now argues an as-applied challenge. So the moot doctrine would apply to an as-applied challenge under these circumstances if we go by the pleadings. I agree, Your Honor, with respect to the public interest exception, which requires these kind of broad public interest questions. Okay. Thank you. The other thing I want to address is this distinction, you know, the fact that emergency orders of protection are ex parte, which is, as counsel noted, a difference in the facts that were presented in Rahimi. In Rahimi, the order of protection was not ex parte. But that does not really make a difference in terms of whether to apply that holding to this case. The Court's analysis in Rahimi didn't take that into account at all. And even if this Court were to kind of look past that, the historical analogs that we cited in our brief reflect a historical tradition not only of disarming individuals based on a judicial finding of a credible threat, but doing so based on, you know, a kind of similar ex parte proceedings that are analogous to the proceedings that we have here in the context of orders of protection. Well, as I said with Mr. McIntyre, and I'm sure that Justice Vaughn did a lot of EOPs as well, sitting on the trial court for quite a bit of time. I did not. You missed out on those. I did not. You lucky soul. Yes. You know, the vast majority of people who come in for an EOP have a very valid reason. There are times when there are not valid reasons. Disgruntled spouse, disgruntled boyfriend, girlfriend, family member who just wants to create havoc on some person. And we live in an area where the vast majority of people probably have a gun because they hunt, they have a CCL, things such as that. So that person, the petitioner goes in and gets an EOP. Then by this statute, the FOIA card is suspended for the respondent, okay? They go in later at some point, you know, through the two days or within the 21-day period for a plenary, and then lo and behold, either the person, the petitioner says, I'm not going to move forward, or there's a hearing and the judge says, now that I've heard the evidence, petitioners, there's no credibility, I'm denying this plenary. There's still this suspension out in the air. Now this person, this respondent, has to go through the bells, whistles, hoops to get his or her FOIA card back. Just to clarify that, Your Honor, that is not the case. And I will acknowledge it's not reflected in the record in this case, but Mr. Kuczynski got his FOIA card back within a week of the order of, you know, the second order of protection, the mutual stay away order being lifted. So you don't have to kind of go through this whole song and dance of getting the cards back. That's why the statute, the FOIA act, as I think we noted in a footnote in our brief, has been amended to clarify that what we're talking about here is a suspension, you know, to sort of reflect that this is, you know, we understand that this is temporary, and so when the FOIA card, you know, when the order of protection is lifted and ISP gets that information, then they can just reissue the FOIA card. And so as a practical matter, that's what happens. But the ease of that has not historically been, and of course that's not the facts here, but it hasn't been always so easy to get your FOIA card reinstated with the ISP, correct? I think it depends on the circumstance. So for some, you know, if it's a full revocation for something that's not intended to be temporary, you know, it may be historically have been kind of more rigorous to kind of get it back and, you know, sort of going through the reapplication process. But for something like this where the purpose, you know, it's sort of understood that, you know, this will be temporary, there is kind of these heated emotions that are leading to this proceeding. And so when this is over, that's why it's only a suspension, you know, you can just get your FOIA card back. And again, that is what happened here. Less than a week for Mr. Kuczynski. But if you're talking about a basic right, one of the ten Bill of Rights, if somebody said you can't have your free speech for five days, you'll get it back in five days. Don't worry about it. This is a Second Amendment. You have a right to a firearm. But we're going to suspend it for five days, even with no finding. You didn't have your day in court. You didn't have to stay in court. The court, through an ex parte order, enters an order, did not make a finding under 214.5 that firearms were necessary to be prohibited. But you lose your Second Amendment right for five days or seven days or 30 days, that still seems kind of bothersome. Well, and to be clear, Your Honor, I think that if there was, you know, if the record showed in a case, you know, a obviously frivolous order of protection, that person could bring, you know, an as-applied challenge to, you know, an as-applied Second Amendment claim in that case. And I think it would be kind of more practical for them to just move to vacate their protection. Well, they have other rights. I mean, the statute says if someone makes a frivolous claim or a false claim, you can get sanctions, you can get attorney's fees, you can get certain things from the petitioner for making that false claim. But as to your Second Amendment rights, I'm a little bothered that the state police, there's a FOID statute that says anytime an order is entered, you lose your card, your right to possess a weapon for a period of time, even without the court's finding that that was necessary. Well, and just to push back on that, Your Honor, you know, for an ex-patriot order of protection, there is a court finding. You know, the circuit court has to. I mean, it's not a finding that the firearm is implicated. It's a finding that you called your ex-wife's employer 20 times in one day. It has nothing to do with firearms, but you lose your firearms license. That's right. But I just wanted to clarify that there is a finding of something that the General Assembly has determined, you know, does pose a danger. And, you know, to this question about whether, you know, that the sort of ex-parte nature of these orders, again, the Rahimi court did not sort of, you know, the Rahimi court said that if there's a judicial finding, then that's sufficient, especially for a temporary suspension. And, you know, with respect to the ex-parte issues specifically, we cited in our brief a number of laws that reflect the historical tradition of similar types of ex-parte orders. Surety laws were very similar to judges could just take testimony from a complainant that they were in fear of a respondent and say, okay, this is sufficient to impose this kind of sanction that the court in Rahimi held was historically analogous. Because that's the test. When we're talking about Second Amendment rights, you know, the test is not about what kind of procedures led to the suspension. It's, you know, the Supreme Court in its opinion in Bruin that it then applied in Rahimi was very clear that this is a textual and a historical analysis. So the key issue is, was there a historical, you know, were there historical laws, historical tradition of firearms regulation that is relevantly similar to the law issue here? And so to that, you know, you kind of look to how the law is operated and why they were imposed. And so it's with the – if you go into that historical analysis that we present in our brief and to which Mr. Kuczynski doesn't really present, you have that historical tradition here even for ex-parte orders. And I see my time has expired. Would you like to make a final statement already? Well, this court – the Supreme Court decision in Rahimi reflects that a judicial finding of a credible threat allows for a firearm suspension – excuse me, a temporary suspension of firearms rights and it's for that reason that this court should affirm. Any final questions? No, thank you. Thank you. Thank you. Thank you. Go right ahead, Mr. Wagner. Thank you. There was a question about the ability to come in on two days' notice and rehear an emergency ex-parte order of protection. I would simply say to anybody that would make that argument, try it sometime. In my experience, you've probably heard far more orders of protections, at least two of you, from what I picked up from the chatter on the bench that I have. But I can't remember the last time that I filed a petition to rehear an emergency ex-parte order of protection on two days' notice where I did not get active resistance from the bench, including vacating the notice of hearing and resetting it out weeks later. It just doesn't happen in my experience. That being said, Rahimi is very clear. It applies to and affirms the federal ban on possessing firearms when orders of protection are issued when there have been credible findings of actual dangerousness and actual notice. That's what the federal statute requires. That's what was before the court in Rahimi. And if you read the actual, not just the majority opinion, but the concurrence in some of the dissenting opinions, that is very important to everybody on the Supreme Court, the fact that there is actual notice. As Justice Vaughn noted, how is it that a court can come in and say, all right, we're going to suspend your First Amendment rights or your Fourth Amendment rights for four days, but you get them back in a few days if we find that the complaint wasn't valid? This is not a case where we're saying that the court lacks the power to say, stay two miles away from the petition, or you can't do X, or whatever X might be of a criminal nature. This statute purports to prohibit, with no notice, minimal at best, and probably no real findings that are relevant to the Second Amendment analysis, a total ban, at least for a time, on a fundamental constitutional right. And we got into, or the court counsel got into, whether or not the Illinois State Police immediately reinstates these. I was in an argument on a similar, although factually different case a week or so ago, and the Assistant Attorney General arguing that case, noting that the state police, in order of protection cases, actually has a policy of not reinstating when the FOIA card, when the order of protection has been expired, at least for some time, because they think that they're going to get an extension or the like. That's not on this record, but neither is the other colloquy, so I thought it important to note that. Unless the court has any other questions? No, thank you. Thank you. I ask that you reverse the trial court and remand for further proceedings. Thank you, counsel. Thank you. Obviously, we will take the matter under advisement. We will issue an order in due course.